UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:18-cv-00050-FDW

| GARY L. JOHNSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| BRYSON GRIER, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court upon initial review of Plaintiff Gary L. Johnson's amended Complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 1 as amended by Doc. No. 8-1.) Also before the Court is Plaintiff's letter motion for leave to file an amended complaint (Doc. No. 8), which the Court shall grant, and motion to consolidate the original § 1983 and amended § 1983 Complaint (Doc. No. 9), which the Court shall grant.

I. BACKGROUND

Plaintiff brings this amended action pursuant to 42 U.S.C. § 1983 against Bryson A. Grier, identified as a Hickory Police officer; the Hickory Police Department ("HPD"); James E. Crapps, Jr., identified as an HPD officer; Willis J. Fowler, Graham H. Atkinson, Eric A. Montgomery, and Angela R. Bryant, identified as commissioners on the North Carolina Post Release Supervision and Parole Commission ("PRSPC") (hereinafter "the PRSPC Defendants"); Erik A. Hooks, identified as Secretary of the North Carolina Department of Public Safety ("DPS"); Reuben F. Young, identified as interim Chief Deputy Secretary of the DPS, and Kenneth E. Lassiter, identified as Director of " (hereinafter "the DPS Defendants"), alleging violations of his constitutional rights under the United States and North Carolina Constitutions,

1

and violations of various state tort laws. (Am. Compl., Doc. No. 1 as amended by Doc. No. 8-1.) Specifically, Plaintiff alleges that he was subjected to false arrest, malicious prosecution, application of an ex post facto sentencing law, and violations of his due process, and Sixth and Eighth Amendment rights.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding in forma pauperis,[1] the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. See Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A pro se complaint must be construed liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under

---

[1] The Court entered an Order on April 7, 2018, waiving the initial partial filing fee and directing that month payments be made from Plaintiff's prison trust account. (Doc. No. 7.)

federal law.  See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).  A pro se complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983).  This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully."  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).  He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief.  Id.

## III. DISCUSSION

### A. § 1983 Official Capacity Claims

The Federal Civil Rights Act, 42 U.S.C. § 1983, imposes civil liability upon every person who, under color of law, deprives another of rights secured by the Constitution and laws of the United States.  42 U.S.C. § 1983.  To prevail on a § 1983 claim, the plaintiff has the burden of establishing (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed under color of state law.  Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999).  By its terms, § 1983 "creates no substantive rights; it merely provides remedies for deprivation of rights established elsewhere."  City of Okla. City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427, 2432 (1985) (citation omitted).

"[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Therefore, a lawsuit against a government official in his official capacity is, in substance, a claim against the governmental entity and should be subject to the same analysis.  See Almone v. City of Long Beach, 478 F.3d

3

100, 106 (2d Cir. 2007); see Hutto v. S.C. Retirement Sys., 773 F.3d 536, 549 (4th Cir. 2014) (State officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State).  Plaintiff has not named the municipality of Hickory as a defendant in this action.  Accordingly, Plaintiff's § 1983 official capacity claims against Defendants Grier and Crapps are dismissed.

The Eleventh Amendment bars suits for damages directly against a state or its agencies, unless the state has waived its sovereign immunity or Congress has exercised its power under § 5 of the Fourteenth Amendment to override that immunity.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989).  Congress has not imposed § 1983 liability upon states, and North Carolina has done nothing to waive its immunity.  Bright v. McClure, 865 F.2d 623, 626 (4th Cir. 1989) (citing McConnell v. Adams, 829 F.2d 1319, 1328 (4th Cir. 1987)).  Therefore, Plaintiff's § 1983 suit for damages against the NCDPS and PRSPC Defendants in their official capacities must be dismissed.

### B.  Defendants Grier, and Crapps

Plaintiff's allegations against these Defendants are as follows:

On February 24, 2016, at about 3:15 a.m., in Hickory, North Carolina, [HPD] Officer Bryson A. Grier . . . without reasonable suspicion or probable cause, stopped Plaintiff, asked [Plaintiff's name] and at the exact same time, put his hand in [Plaintiff's] left front pants pocket and pulled out [Plaintiff's] North Carolina Driver's License.

Plaintiff was served with a magistrate's order[ ] charging him with misdemeanor [possession of] drug paraphernalia and a Post-Release violation warrant.  A warrant for felonious habitual larceny was issued at that time without [Plaintiff's] knowledge and [which] was not served on Plaintiff until August 17, 2016 . . . . [Grier] became a "Complainant" on the warrant issued on 2-25-2016, and [Grier] did not serve it, pursuant to [state statute].

On March 19, 2018, [HPD] Officer James E. Crapps, Jr. testified before a grand jury in Catawba County, N.C. in reference to the Plaintiff in Case No. 17CRS916, formerly Case No. 16CRS51086 (Habitual Larceny).

> Upon information and belief, Officer Crapps was not present at the incident and arrest scene on February 24, 2016, nor was he involved in the initial investigation of the alleged crime.

(Am. Compl. ¶¶ 10-13.) Plaintiff alleges Defendant Grier testified before another grand jury on February 20, 2017, but he does not state whether that testimony was related to the habitual larceny warrant. (Am. Compl. ¶ 23.) However, the Court will infer that it did.

Plaintiff claims his arrest by Defendant Grier constituted false arrest under the Fourth Amendment, that Grier's failure to serve him with the habitual felony larceny warrant for six months deprived him of his Sixth Amendment right to counsel and due process, and that Grier's "false statements and fabrication of evidence in police reports constitute judicial deception," malicious prosecution, and violation of the Law of the Land Clause of the North Carolina Constitution, Art. I, sec. 19. (Am. Compl. ¶¶ 19-21.) Plaintiff further claims that Defendants Grier and Crapps, through their testimony before two different grand juries, conspired to violate his rights to due process and a fair trial. (Am. Compl. ¶¶ 22-24.)

### 1. Fourth Amendment Claims for False Arrest and Malicious Prosecution

#### a. False Arrest

Because an arrest amounts to a Fourth Amendment seizure, probable cause is necessary for an arrest to be lawful. See Henderson v. Simms, 223 F.3d 267, 272 (4th Cir. 2000); see also Draper v. United States, 358 U.S. 307, 310-11 (1959). Accordingly, false arrest is a facially valid civil rights claim. See Wallace v. Kato, 549 U.S. 384 (2007); Brooks v. City of Winston–Salem, 85 F.3d 178, 183 (4th Cir. 1996); Green v. Maroules, 211 F. App'x 159 (4th Cir. 2006). A plaintiff may allege a violation of § 1983 by asserting that "state agents arrested her without probable cause in violation of her Fourteenth Amendment right to be free from unreasonable seizure by the state government." Green, 211 F. App'x at 161.

While the Complaint alleges Defendant Grier had neither reasonable suspicion nor probable cause to stop Plaintiff, ask his name, or pull his driver's license out of his pocket on February 24, 2016 (Am. Compl. ¶ 10), the Complaint also asserts that upon his arrest, Plaintiff was served with a warrant for violating the conditions of post-release supervision (Am. Compl. ¶ 15). According to DPS records, Plaintiff was convicted in 2007 of felony breaking and entering ("B&E") and larceny after B&E and sentenced as an habitual felon to a minimum of 90 months and a maximum of 117 months in prison.[2] He was paroled and placed on post-release supervision on May 14, 2015. (Am. Compl. ¶ 15.) Pursuant to statute, an individual on post-release supervision is subject to arrest for violating conditions of release "only upon issuance of an order of temporary or conditional revocation of post-release supervision by the [Post Release Supervision and Parole] Commission." N.C.G.S. § 15A-1368.6(a) (2008).

When stripped of their legal conclusions, Plaintiff's allegations are that on February 24, 2016, Defendant Grier stopped Plaintiff, asked his name, removed his driver's license from his front pocket, arrested Plaintiff and served him with a warrant for violating the conditions of post-release supervision. Under § 1983, "a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant." Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998) ("[A] claim for false arrest may be considered only when no arrest warrant has been obtained."); see Graham v. Connor, 490 U.S. 386, 396 (1989) (finding no Fourth Amendment violation when an arrest is based on probable cause); Brooks v. City of Winston-Salem, 85 F.3d 178, 181–83 (4th Cir. 1996) (determining that when the arresting official makes

---

[2] See NCDPS Offender Public Info., https://webapps.doc.state.nc.us./opi/offendersearch.do?method=view (Johnson, Gary L., OPUS # 0210097, last viewed July 12, 2019). "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" Goldfarb v. Mayor & City Council of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015). However, under Rule 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

the arrest with a facially valid warrant, it is not false arrest). Under North Carolina law, "a finding of probable cause necessarily defeats [a] plaintiff's claims for false arrest and malicious prosecution" against a municipality as well as its agents. Adams v. City of Raleigh, 782 S.E.2d 108, 114 (N.C. Ct. App. 2016).

Plaintiff does not allege that the post-release violation warrant was invalid on its face, issued without probable cause, or issued without an order by the PRSPC. As such, Plaintiff has failed to state a Fourth Amendment claim of false arrest under § 1983 or state law, for the February 24, 2016 arrest.

### b. Malicious Prosecution

A § 1983 "malicious prosecution" claim "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Lambert v. Williams, 223 F.3d 257, 261-62 (4th Cir. 2000). To succeed on a Fourth Amendment § 1983 malicious prosecution claim, "a plaintiff must show that 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [the] plaintiff's favor.'" Humbert v. Mayor & City Council of Baltimore City, 866 F.3d 546, 555 (4th Cir. 2017), as amended (Aug. 22, 2017), cert. denied sub nom. Mayor & City Council of City of Baltimore, Maryland v. Humbert, 138 S. Ct. 2602 (2018) (quoting Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)). To prove a claim for malicious prosecution under state law, a plaintiff must show that: "(1) the defendant instituted, procured, or participated in a criminal proceeding against the plaintiff; (2) without probable cause; (3) with malice; and (4) the criminal proceeding terminated in favor of the plaintiff." DeBaun v. Kuszaj, 749 S.E.2d 110 (N.C. Ct. App. 2013) (citation and internal quote omitted).[3]

---

[3] "[L]egal malice may be inferred from a lack of probable cause." Williams v. Kuppenheimer Mfg. Co., 412 S.E.2d 897, 901 (N.C. Ct. App. 1992)

7

In his Complaint, Plaintiff mentions only two crimes related to his February 24, 2016 arrest – misdemeanor possession of drug paraphernalia and habitual felony larceny.  He does not allege facts to support any of the elements of either a §1983 4th Amendment or state law malicious prosecution claim for the drug paraphernalia charge.  Accordingly, to the extent Plaintiff is attempting to raise such claims for the possession charge, they are dismissed

Regarding the felony larceny charge, it appears from the Amended Complaint that the habitual felony larceny warrant issued on or about February 25, 2016, led to the opening of Case No. 16CRS51086, which, for reasons Plaintiff does not explain, was dismissed on some undisclosed date.  Then, at some point in 2017, the State opened Case No. 17CRS916, charging Plaintiff with the same felony larceny that it had in Case No. 16CRS51086.  (Am. Compl. ¶12).

The Amended Complaint indicates the State sought indictments in both Case No. 16CRS51086 and Case No. 17CRS916.  The grand jury is the entity that determines whether there is probable cause for the State to pursue a prosecution.  See e.g. Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012) ("[T]he Supreme Court has held that an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause." (citation and internal quote omitted)).  Because the State allegedly sought to indict Plaintiff for the same felony larceny in both cases, the Court, drawing all reasonable inferences in Plaintiff's favor, infers that the grand jury did not return an indictment in Case No. 16CRS51086.  Put differently, the Court infers the grand jury concluded probable cause did not exist for the State to prosecute Plaintiff in Case No. 16CRS51086.

At some point thereafter, the State opened Case No. 17CRS916 and again sought an indictment for the felony larceny offense.  In his July 8, 2019 motion to consolidate the original § 1983 Complaint and Amended Complaint, Plaintiff asserts that on July 27, 2018, the State

8

orally dismissed Case No. 17CRS916 in open court and on July 30, 2018, filed a form dismissing the case. (Mot. ¶ 3, Doc. No. 9.)[4]

### i. Defendant Grier

Plaintiff alleges Defendant Grier was the complainant for the habitual felony larceny warrant issued on or about February 24, 2016, which led to the opening of Case No. 16CRS51086; that Grier served the warrant on Plaintiff on August 17, 2016; that Grier made "false statements" and "fabricat[ed] . . . evidence in police reports," and that Grier testified before a grand jury on February 20, 2017, which the Court infers was in Case No. 16CRS51086. (Am. Compl. ¶¶ 11, 21, 23.) Plaintiff does not allege that the habitual felony larceny warrant was issued without probable cause or that Grier testified falsely before the grand jury. Nevertheless, based upon the allegations that Grier made false statements and fabricated evidence in police reports and the inference that an indictment was not returned in Case No. 16CRS51086, the Court finds the Amended Complaint meets the threshold showing required for Plaintiff's § 1983 4th Amendment and state malicious prosecution claims to survive initial review against Defendant Grier in his individual capacity.

Plaintiff's claim that Grier violated the North Carolina Constitution's "law of the land" clause, N.C. Const. art. I, § 19, (Am. Compl. ¶ 21) is dismissed. In Corum v. University of North Carolina, 413 S.E.2d 276 (NC 1992), the North Carolina Supreme Court held that "an individual whose state constitutional rights have been abridged has a direct action for monetary damages against a state official in their official, but not individual capacity, if there is no adequate remedy provided by state law." Rousselo v. Starling, 495 S.E.2d 725, 730 (N.C. Ct.

---

[4] Plaintiff should have included these facts in his Amended Complaint, filed June 27, 2019. Given Plaintiff's pro se status and the nature of the facts alleged, however, the Court includes them in its consideration of the malicious prosecution claim despite that they were alleged outside the pleadings.

9

App. 1998) (citing Corum, 413 S.E.2d at 290–92). Plaintiff has an adequate state law remedy for his malicious prosecution claim. See DeBaun v. Kuszaj, 749 S.E.2d 110 (N.C. Ct. App. 2013) (holding that the plaintiff could not bring a cause of action under the North Carolina Constitution against police officer in his official capacity because the plaintiff could seek a remedy for his injury through a state law claim of malicious prosecution).

### ii. Defendant Crapps

With respect to Defendant Crapps, the Amended Complaint alleges only that he was not present on February 24, 2016, when Defendant Grier stopped and arrested Plaintiff, that he testified before a grand jury on March 19, 2018, in Case No. 17CRS916, and that four months later, the State dismissed the case. (Am. Compl. ¶ 12.) Notwithstanding the minimal facts alleged against Crapps, the Court finds Plaintiff's claim of malicious prosecution survives initial review based upon the State's presumed failure to secure an indictment in Case No. 16CRS51086 and its subsequent dismissal of Case No. 17CRS916.

### 2. Sixth Amendment and Fourteenth Amendment Claims

Plaintiff claims, without further explanation, that the six-month delay between Grier obtaining the felony larceny warrant in Case No. 16CRS51086 and serving it violated his Sixth Amendment right to counsel and Fourteenth Amendment right to due process. These claims fail as a matter of law.

The Sixth Amendment right to counsel only attaches at or after adversary judicial proceedings have been initiated against a defendant, "whether by way of formal charge, preliminary hearing, indictment, information or arraignment." United States v. Gouveia, 467 U.S. 180, 187-88 (1984); Kirby v. Illinois, 406 U.S. 682, 688 (1972). The United States Supreme Court has "never held that the right to counsel attaches at the time of arrest," United

States v. Gouveia, 467 U.S. 180, 190 (1984), or, by extension, before a warrant for arrest has been served. The "initiation of adversary judicial criminal proceedings" is "that time 'that the government has committed itself to prosecute, and . . . that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'" Id. at 189 (quoting Kirby, 406 U.S. at 689.)

Under North Carolina law, "[t]he pleading in felony cases and misdemeanor cases initiated in the superior court division must be a bill of indictment, unless there is a waiver of the bill of indictment [and in that situation,] the pleading must be an information."[5] N.C. Gen. Stat. § 15A-923(a). Thus, an arrest warrant for felony larceny is not a sufficient charging document upon which a defendant may be tried in a North Carolina superior court and is not a "formal charge" as contemplated under Kirby. See, e.g., State v. Taylor, 550 S.E.2d 141, 147 (N.C. 2001) (holding that an arrest warrant for first-degree murder is not a formal charge as contemplated under Kirby). Consequently, Plaintiff's Sixth Amendment right to counsel did not attach at the issuance of the felony larceny warrant, see id., and he has failed to state a Sixth Amendment claim under § 1983 for denial of counsel.

Plaintiff likewise has failed to state a due process claim under § 1983. The Supreme Court and the Fourth Circuit have been clear that "the Due Process Clause is not the proper lens through which to evaluate law enforcement's pretrial missteps." Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017). Instead, it is the Fourth Amendment that "provides an explicit textual source of constitutional protection against [unreasonable seizures and arrests]," id. (quoting Graham v. Connor, 490 U.S. 386, 395 (1989), and "define[s] the 'process that is due' for seizures

---

[5] An "information" is "a written accusation by a prosecutor, filed with a superior court, charging a person represented by counsel with the commission of one or more criminal offenses." N.C. Gen. Stat. § 15A-641(b).

11

of persons or property in criminal cases," Safar, 895 F.3d at 245 (quoting Gerstein v. Pugh, 420 U.S. 103, 125 n.27 (1975)).

### 3. Conspiracy Claim

Plaintiff's claim that Defendants Grier and Crapps, through their testimony before two different grand juries, conspired to violate his rights to due process and a fair trial is dismissed for failure to allege sufficient facts to state a claim for relief. Plaintiff has alleged no facts to support his claim of a conspiracy between the two defendants. See Twombly, 550 U.S. at 555, 570 (A pro se complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face."); Weller, 901 F.2d 387 (holding that the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim).

### B. Defendant Hickory Police Department

Plaintiff alleges that "[u]pon information and belief," the HPD "has a full and well known history of alleged civil rights violations, including one currently active claim of excessive force/brutality. Other claims may include lack of proper training of police personnel, which stems from the official policies, practices and customs of the [HPD]." (Am. Compl. ¶ 14.) He asserts further that Defendant HPD's "policies, practices and customs that allow and do not deter, unlawful conduct that violates citizen's constitutional and legal rights, constitutes the claim of respondeat superior in respect to all the Plaintiff's civil rights claims and state law tort claims asserted against [Grier and Crapps]." (Am. Compl. ¶ 25.) Plaintiff has failed to state a claim for relief against the HPD under § 1983.

First, the HPD is not amenable to suit under § 1983. Only "persons" may act under color of state law; thus, a defendant in a § 1983 action must qualify as a "person." See 42 U.S.C. §

1983; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978) (noting that for purposes of § 1983, a person includes individuals and bodies politic and corporate). Courts have held that municipal police departments are not "persons" within the meaning of § 1983 and, therefore, are not liable under that statute. See, e.g., Mohammad v. Albuquerque Police Dep't, 699 F. App'x 838, 839 (10th Cir. 2017) (unpublished) ("[T]he Albuquerque Police Department is not a 'person' under § 1983."); Monroe v. Shaffer, 87 F.3d 1309, 1996 WL 329607 at *4 (4th Cir. 1996) (unpublished) (upholding district court's grant of summary judgment to Charlottesville Police Department ("CPD") because the CPD is not a person within the meaning of § 1983).

The same is true under state law. See Wright v. Town of Zebulon, 688 S.E.2d 786, 789 (N.C. Ct. App. 2010) (affirming lower court's grant of summary judgment dismissing defendant police department as a matter of law). "Under North Carolina law, unless a statute provides to the contrary, only persons in being may be sued." Id. (citing McPherson v. First & Citizens Nat. Bank of Elizabeth City, S.E.2d 386, 397 (N.C. 1954)). "In North Carolina there is no statute authorizing suit against a police department." Wright, 688 S.E.2d at 789 (quoting Coleman v. Cooper, 366 S.E.2d 2, 5 (N.C. Ct. App.), disc. review denied, S.E.2d 275 (N.C. 1988), overruled in part on other grounds by Meyer v. Walls, S.E.2d 880 (N.C. 1997)) (internal quotation marks omitted). "A municipal police department is a component of the municipality, and, therefore, lacks the capacity to be sued." Wright, 688 S.E.2d at 789 (citing Coleman, 366 S.E.2d at 5; Ostwalt v. Charlotte–Mecklenburg Bd. of Educ., 614 F.Supp.2d 603, 607 (W.D.N.C.2008) (holding, per Coleman, that city police department was "entitled to dismissal as a matter of law" from negligence action)).

Next, even if the HPD could be sued as a municipal entity under § 1983, it cannot be held liable for a constitutional violation based on the doctrine of respondeat superior. See Monell,

463 U.S. at 691. "To hold a municipality (a local government entity) liable for a constitutional violation under § 1983, the plaintiff must show that the execution of a policy or custom of the municipality caused the violation." Love–Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). "Municipal policy may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (citations omitted). Outside of formal decision-making channels, a "municipal custom may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." Id. (internal quotation marks omitted). A municipality may also be liable if the alleged violation was caused by an individual's official actions that represent the municipality's official policy, see Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 522–23 (4th Cir. 2000), provided the individual possesses final authority to establish municipal policy with respect to those actions, id. at 523.

Here, Plaintiff makes no factual allegations showing, or from which it reasonably can be inferred, that the HPD had a policy, custom, or practice that caused Grier's or Crapps' alleged Fourth Amendment violations. That some unidentified person has brought an excessive use of force complaint against the HPD is not a factual allegation supporting the existence of a policy, custom, or practice that caused the alleged constitutional violations against Plaintiff. Plaintiff's belief that there may be one or more lawsuits against the HPD alleging insufficient training of police personnel is exactly what it purports to be: a statement of belief. It is not an allegation of fact. Plaintiff also does not contend that any of the individual defendants had final authority to establish municipal policy with respect to Grier and Crapps alleged actions.

14

### C. State Defendants

Plaintiff claims the remaining Defendants have violated his right to be free from the ex post facto application of a law that increased the length of his sentence. He also alleges the NCDPS and PRSPC Defendants violated his Eighth Amendment rights and denied him a protected liberty interest.

The Amended Complaint is not a model of clarity, and the Court has done its best to interpret the claims raised against the NCDPS and PRSPC Defendants. The Court's understanding of Plaintiff's claims may be summarized as follows:

On September 24, 2007, Plaintiff was convicted of several Class H felonies and sentenced as an habitual offender to a minimum of 90 months and a maximum of 117 months in prison. See NCDPS Offender Public Info. website, supra, at fn. 1. In 2011, the North Carolina legislature enacted the Justice Reinvestment Act ("JRA"), effective December 1, 2011, which made some significant changes to the state's structured sentencing regime, including mandating terms of post-release supervision for all convicted felons except those serving sentences of life without parole. See United States v. Barlow, 811 F.3d 133, 137 (4th Cir. 2015) (citing Justice Reinvestment Act of 2011, 2011 N.C. Sess. Laws 192 § 2(a), (b)). Prior to enactment of the JRA, serious Class E through BI felons serving terms less than imprisonment for life received post-release supervision beginning nine months prior to the expiration of their maximum sentences. See id. The JRA lengthened the term of post-release supervision for those serious felonies to twelve months and introduced a new nine-month period of mandatory post-release supervision for all other felonies, including Plaintiff's. See id.

Plaintiff was released on post-release supervision on May 14, 2015. (Am. Compl. § 15.) On January 19, 2016, he committed an offense that violated the terms of his post-release

supervision, see NCDPS Offender Public Info. website, supra, and on February 24, 2016, he was arrested and served a warrant for that violation (Am. Compl. § 15). According to NCDPS records, Plaintiff also was convicted of that violation and reincarcerated on February 24, 2016, see NCDPS Offender Public Info. website, supra; he completed his sentence on October 5, 2016, see id.; (Am. Compl. § 15).

Plaintiff alleges application of the JRA's post-release requirement violated the ex post facto clauses of the United States and North Carolina Constitutions and state tort laws (false imprisonment, malicious prosecution, and negligence) because it "exceeded the punishment for the sentence imposed on 9-24-2007." (Am. Compl. §§ 26, 28.) He also asserts in conclusory fashion that the NCDPS and PRSPC Defendants violated his Eighth Amendment rights and denied him a protected liberty interest, without identifying the liberty interest that allegedly was denied. (Am. Compl. § 27.) He contends the NCDPS Defendants and the PRSPC Defendants "share direct or indirect personal involvement and responsibility for imposing the State's post-release rules on the Plaintiff." (Am. Compl. § 26.)

"The constitutions of both the United States and North Carolina prohibit the enactment of ex post facto laws. Jones v. Keller, 698 S.E.2d 49, 57 (N.C. 2010) (citing U.S. Const. art. I, § 10, cl. 1 ("No state shall . . . pass any . . . ex post facto law . . . ."); N.C. Const. art. I, § 16 ("Retrospective laws, punishing acts committed before the existence of such laws and by them only declared criminal, are oppressive, unjust, and incompatible with liberty, and therefore no ex post facto law shall be enacted.")). The federal and North Carolina constitutional ex post facto provisions are analyzed "under the same definition." Jones, 689 S.E.2d. at 57 (citing State v. Wiley, 565 S.E.2d 22, 45 (N.C. 2002)). Relevant here, the ex post facto prohibition applies to: "Every law that changes the punishment, and inflicts a greater punishment, than the law annexed

16

to the crime, when committed." Collins v. Youngblood, 497 U.S. 37, 42 (1990) (citation omitted).

In United States v. Barlow, the Fourth Circuit Court of Appeals analyzed the JRA's change in North Carolina's post-release supervision rules, although it did so in a different context. 811 F.3d 133 (4th Cir. 2015). The Fourth Circuit determined that North Carolina law defines post-release supervision as " '[t]he time for which a sentenced prisoner is released from prison *before the termination of his maximum prison term*.'" Id. at 138 (quoting N.C. Gen. Stat. § 15A–1368(a)(1) (emphasis added)). The "sentence or sentences" originally imposed by the trial court "do not terminate until 'a supervisee completes the period of post-release supervision.'" Barlow, 811 F.3d at 138 (quoting N.C. Gen. Stat. § 15A–1368.2(f)). Thus, "[s]tate law . . . places time spent on post-release supervision within, *not outside of or in addition to*, the maximum term of imprisonment." Barlow, 811 F.3d at 138 (emphasis added). In other words, under North Carolina law, post-release supervision merely replaces a portion of the sentence that otherwise would be spent in prison and is considered part of the total term of imprisonment.

Supervisees who abscond from supervision or who commit an additional crime while on release "will be returned to prison up to the time remaining on their maximum imposed terms." N.C. Gen. Stat. § 15A–1368.3(c)(1) (emphasis added). "North Carolina courts have expressly held that when a supervisee violates a condition of post-release supervision and returns to prison, that period of imprisonment is part of the original sentence, not punishment for the supervision infraction." Barlow, 811 F.3d at 139 (citing State v. Sparks, 657 S.E.2d 655, 661 (N.C. 2008) ("[R]evocation of defendant's post-release [supervision] and reinstatement of the time remaining on his original sentence result from defendant's original felony convictions and not from his

conduct which triggered the revocation, absconding from his post-release officer."); State v. Corkum, 735 S.E.2d 420, 423 (N.C. Ct. App. 2012) ("There is no new sentence imposed as a result of a revocation of post-release supervision; only the remaining portion of the original sentence is activated.")).

Plaintiff's maximum term of imprisonment imposed by the trial court was 117 months, which began on September 24, 2007. He was released on post-release supervision on or about May 16, 2015, returned to prison on February 24, 2016, for violating post-release supervision, and released from prison less than nine months later, on October 5, 2016. Plaintiff served between 108 and 109 months of his 117-month maximum sentence. Plaintiff has failed to allege any facts that show, or from which it can be inferred, that application of the JRA's post-release supervision provisions increased the punishment for his 2007 underlying offense(s). As such, Plaintiff has failed to state a claim for relief under § 1983 for a violation of the ex post facto clause. His claims for relief for Eighth and Fourteenth Amendment claims also are dismissed as he has alleged no facts to support them.

## IV. CONCLUSION

Plaintiff may proceed with his 4th Amendment § 1983 claim and state law claim of malicious prosecution against Defendants Grier and Crapps in their individual capacities. The remainder of Plaintiff's claims are dismissed for the reasons stated herein.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion to Amend his Complaint (Doc. No. 8) is **GRANTED**;

2. Plaintiff's Motion to consolidate the original § 1983 and amended § 1983 Complaint (Doc. No. 9) is **GRANTED**;

3. The Clerk of Court is directed to add the following Defendants to this action: 1)

Hickory Police Department; 2) James E. Crapps, Jr., Hickory Police Department; 3) Willis J. Fowler, North Carolina Post Release Supervision and Parole Commission; 4) Graham H. Atkinson, North Carolina Post Release Supervision and Parole Commission; 5) Eric A. Montgomery, North Carolina Post Release Supervision and Parole Commission; 6) Angela R. Bryant, North Carolina Post Release Supervision and Parole Commission; 7) Erik A. Hooks, Secretary of the North Carolina Department of Public Safety; 8) Reuben F. Young, interim Chief Deputy Secretary of the North Carolina Department of Public Safety; and 9) Kenneth E. Lassiter, Director, North Carolina Department of Public Safety.

4. Plaintiff's claims against Defendants Hickory Police Department, Willis J. Fowler, Graham H. Atkinson, Eric A. Montgomery, Angela R. Bryant, Erik A. Hooks, Reuben F. Young, and Kenneth E. Lassiter are **DISMISSED**, and the Clerk of Court is directed to terminate these Defendants from this action;

5. Plaintiff may proceed with his malicious prosecution claims against Defendant Bryson A. Grier and Defendant James E. Crapps, Jr., in their individual capacities. All other claims against Defendants Grier and Crapps are **DISMISSED**.

6. The Clerk is directed to mail summons forms to Plaintiff for him to fill out and then return to the Court. Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service on Defendant Grier and on Defendant Crapp. Plaintiff may use the address for the Hickory Police Department for both Defendants; and

7. Once the Court receives the completed summons forms from Plaintiff, the Clerk shall then direct the U.S. Marshal to effectuate service upon Defendant Grier and upon

Defendant Crapps.

**SO ORDERED.**

Signed: October 7, 2019

Frank D. Whitney
Chief United States District Judge