| | |
|---|---|
| GARY L. JOHNSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>BRYSON GRIER, in his individual )<br>capacity, and JAMES CRAPPS, in his )<br>individual capacity )<br>)<br>Defendants. )<br>_____ ) | O R D E R |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 23].

**I.     PROCEDURAL BACKGROUND**

On March 26, 2018, Gary Johnson (the "Plaintiff"), proceeding *pro se*, filed a Complaint against Hickory Police Department Officer Bryson Grier ("Defendant Grier") asserting claims under 42 U.S.C. § 1983 for violations of his Fourth, Fifth, and Fourteenth Amendment rights. [Doc. 1 at 3].

On June 27, 2019, the Plaintiff filed a Motion for Leave to File an Amended Complaint asserting additional claims against Defendant Grier and adding claims against Hickory Police Department Officer James E. Crapps ("Defendant Crapps"); the Hickory Police Department; several

commissioners on the North Carolina Post Release Supervision and Parole Commission; and the Secretary, Chief Deputy Secretary, and Director of the Department of Public Safety. [Doc. 8; Doc. 8-1].

Because the Plaintiff is proceeding *in forma pauperis*, the Court conducted an initial review of the Plaintiff's claims under 28 U.S.C. § 1915(e)(2)(B). [Doc. 12]. After initial review, the Court dismissed the Plaintiff's claims against Defendants Grier and Crapps in their official capacities and all of the claims against the Hickory Police Department; the North Carolina Post Release Supervision and Parole Commissioners; and the Secretary, Chief Deputy Secretary, and Director of the Department of Public Safety. [Id. at 19]. The Court allowed the Plaintiff to proceed on his § 1983 claims for Fourth Amendment violations and his state-law malicious prosecution claims against Defendants Grier and Crapps in their individual capacities. [Id.].

On December 4, 2019, Defendants Grier and Crapps filed an Answer to the Plaintiff's Complaint. [Doc. 16]. On October 31, 2020, Defendants Grier and Crapps filed a Motion for Summary Judgment on the Plaintiff's remaining claims. [Doc. 23]. On November 4, 2020, the Court issued a Roseboro[1] Order advising the Plaintiff of his obligations in responding to the

---
[1] Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975).

Motion for Summary Judgment, directing the Plaintiff to respond within thirty days, and warning that the "Plaintiff's failure to respond may result in Defendants being granted the relief Defendants seek by way of summary judgment." [Doc. 25 at 4]. The Plaintiff has not responded to the Motion.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers, admissions, stipulations, affidavits, and other materials on the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "As the Supreme Court has observed, 'this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Id. at 522.

Once the moving party presents evidence to carry its burden under Rule 56, the non-moving party may not rest upon its pleadings, but must

affirmatively set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to a 'judgment as a matter of law.'" Custer v. Pan American Life Ins. Co., 12 F.3d 410, 416 (4th Cir .1993). "Therefore, even when the adverse party fails to respond to the motion for summary judgment, the court must review the motion and the materials before the court to determine if the moving party is entitled to summary judgment as a matter of law." Meyer v. Qualex, Inc., 388 F. Supp. 2d 630, 634 (E.D.N.C.2005); see also Fed. R. Civ. P. 56(e). When making that determination, the Court views the pleadings and material presented in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. Smith v. Collins, 964 F.3d 266, 274 (4th Cir. 2020).

### III.  FACTUAL BACKGROUND

The forecast of evidence viewed in the light most favorable to the Plaintiff as the non-moving party shows the following. Defendants Grier and Crapps work for the Hickory Police Department. [Doc. 23-2 at 1; Doc. 23-3 at 1]. On December 30, 2015, Defendant Crapps responded to a shoplifting

4

call at the Walmart located on Highway 70 in Hickory, North Carolina. [Doc. 23-3 at 1]. Defendant Crapps located and stopped the Plaintiff, who was at a nearby bank, because he matched the suspect's description. [Id. at 2]. Defendant Crapps received the Plaintiff's consent to search his person and discovered eight items with a value of $80.66, a metal push rod, and a glass pipe with drug residue. [Id.]. A manager from Walmart arrived and verified that the Plaintiff had taken the items from the Walmart and concealed them. [Id.]. Defendant Crapps placed the Plaintiff under arrest for possession for drug paraphernalia and possible misdemeanor larceny. [Id. at 3].

Defendant Crapps took the Plaintiff to the Hickory Police Department, where the Plaintiff appeared before a magistrate. [Id.]. The magistrate found probable cause to charge the Plaintiff with possession of drug paraphernalia and misdemeanor larceny. [Id.]. Defendant Crapps later learned that the Plaintiff could be charged as a habitual felon based on his criminal record and notified the District Attorney's office. [Id.]. The District Attorney's office dismissed the misdemeanor larceny charge and convened a grand jury, which charged the Plaintiff with felony habitual felon and habitual larceny. [Id.]. On April 11, 2018, the Plaintiff was convicted of habitual felon, habitual larceny, and possession of drug paraphernalia. [Id.].

5

On the evening of February 24, 2016, Defendant Grier saw the Plaintiff walk into the Walmart on Highway 70. [Doc. 23-2 at 2]. Approximately 30 minutes later, Defendant Grier saw the Plaintiff walking up the driveway of a business located on Highway 70 SW. [Id. at 2]. Defendant Grier found that suspicious because it was late in the evening and the business was closed. [Id.].

Defendant Grier stopped the Plaintiff and asked for his identification. [Id.]. The Plaintiff consented to the search of his pockets for illegal items. [Id.]. Defendant Grier found six personal care and hygiene items in the Plaintiff's pockets and two glass crack pipes. [Id. at 2-3]. The items in the Plaintiff's pockets had a value of $129.02. [Id. at 3].

Defendant Grier asked the Plaintiff if he paid for the items. [Id.]. The Plaintiff said that he bought the items but was unable to produce a receipt or a bag. [Id.]. The Plaintiff later changed his story and said that a friend purchased the items. [Id.].

Defendant Grier conducted a warrant check and discovered that the Plaintiff was wanted for a parole violation. [Id.]. Defendant Grier placed the Plaintiff under arrest for the parole violation, possession for drug paraphernalia, and possible misdemeanor larceny. [Id.].

Defendant Grier took the Plaintiff to the Hickory Police Department. [Id.]. The Plaintiff appeared before a magistrate who found probable cause to charge the Plaintiff with possession of drug paraphernalia and served him with his parole violation papers. [Id. at 3, 6]. The magistrate, however, wanted more information regarding the larceny charge. [Id.].

Defendant Grier returned to the Walmart located on Highway 70 and met with the store manager. [Id. at 4].[2] The manager showed Defendant Grier security camera footage of the Plaintiff entering the store and concealing the items that were found on the Plaintiff's person, and confirmed that these items were from Walmart's inventory. [Id.].

Defendant Grier returned to the magistrate and sought a warrant for habitual larceny because he was aware that the Plaintiff had three prior larceny convictions. [Id]. The magistrate found probable cause to issue a warrant for habitual larceny. [Id at 4, 7]. The Plaintiff pleaded guilty to the drug paraphernalia charge. [Doc. 23-2 at 30-31]. The State did not present any evidence on the habitual larceny charge, and it was dismissed. [Doc. 23-3 at 237, 244].

---

[2] It is unclear whether Defendant Grier returned to the Walmart on that same day or on the following day, February 25, 2016. [Doc. 23-2 at 4 (stating that "Later in the day on 2/25/16, I went to the Walmart Neighborhood Market . . . ."). The specific date is not relevant to the analysis here.

7

## IV. DISCUSSION

Because the Plaintiff has failed to respond to the Defendants' Motion for Summary Judgment, the Court concludes that the Plaintiff has failed to show the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(e). Accordingly, the sole question is whether the facts presented by the Defendants establish their entitlement to summary judgment as a matter of law. Custer v. Pan American Life Ins. Co., 12 F.3d 410, 416 (4th Cir .1993).

### A. Section 1983 Claims

The Plaintiff first brings claims under § 1983 for malicious prosecution. While "it is not entirely clear whether there is a separate constitutional right to be free from malicious prosecution, if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure." Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012) (citing Snider v. Seung Lee, 584 F.3d 193, 199 (4th Cir. 2009)). "Thus, what has been inartfully termed a 'malicious prosecution' claim is simply a claim founded on a Fourth Amendment seizure that incorporates the elements of the analogous common law tort of malicious prosecution." Durham, 690 F.3d at 188 (citation and internal quotation marks omitted). To prevail on such a claim, a plaintiff must prove "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal

8

process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). Probable cause is determined by examining the totality of circumstances known to the officer at the time. Id.

At the time of the December 2015 arrest, Defendant Crapps was aware of the following facts: (1) there was a report of shoplifting at the Walmart on Highway 70; (2) the Plaintiff was walking near the Walmart shortly after the report; (3) the Plaintiff matched the description of the suspect; (4) the Plaintiff was concealing several items in his shirt, jacket, and pockets; (5) a Walmart manager confirmed that the Plaintiff had taken the items from the Walmart and concealed them; and (6) the Plaintiff was carrying a glass pipe with drug residue. [Doc. 23-3 at 1-3]. Thereafter, Defendant Crapps became aware that the Plaintiff had several prior convictions and could be charged with a felony. [Id. at 3]. Even when viewed in the light most favorable to the Plaintiff, Defendant Crapps could have reasonably believed that the Plaintiff

9

committed larceny and was in possession of drug paraphernalia under the totality of the circumstances.

At the time of the February 24, 2016 arrest, Defendant Grier was aware of the following facts: (1) the Plaintiff was walking alone at night along the side of Highway 70 after leaving a Walmart; (2) the Plaintiff was carrying several products in his pockets and waistband; (3) the Plaintiff had no bag or receipt for the items; (4) the Plaintiff gave inconsistent explanations for how he obtained the items; (5) the Plaintiff was carrying two glass pipes; and (6) the Plaintiff had an outstanding warrant. [Doc. 23-2 at 1-3]. Viewing those facts in the light most favorable to the Plaintiff, there was sufficient evidence for Defendant Grier to reasonably believe that the Plaintiff was in possession of drug paraphernalia. Moreover, Defendant Grier subsequently met with a Walmart manager who confirmed that the items the Plaintiff was carrying were from Walmart's inventory and showed Defendant Grier security camera footage of the Plaintiff entering the store and concealing the items. [Id. at 4]. Even viewing those facts in the light most favorable to the Plaintiff, Defendant Grier had sufficient evidence to reasonably believe that the Plaintiff had committed larceny.

In short, the undisputed forecast of evidence establishes probable cause for the Plaintiff's arrests. See Durham, 690 F.3d at 190. Accordingly,

the Court concludes that the Defendants' Motion for Summary Judgment must be granted on the § 1983 claims and those claims must be dismissed.

## B. Malicious Prosecution Claims

The Plaintiff also brings claims for malicious prosecution under North Carolina law. Because the Court concludes that the arrests were supported by probable cause, the Plaintiff's malicious prosecution claims under North Carolina law also fail. Martin v. Parker, 150 N.C. App. 179, 182, 563 S.E.2d 216, 218 (2002) (affirming dismissal of malicious prosecution claim, noting that "the presence of probable cause necessarily defeats plaintiff's claim"). Accordingly, the Defendants' Motion for Summary Judgment will be granted on the Plaintiff's malicious prosecution claims under North Carolina law.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 23] is **GRANTED**, and the Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

The Clerk of Court is respectfully directed to terminate this civil action.

**IT IS SO ORDERED**.

Signed: March 9, 2021

Martin Reidinger
Chief United States District Judge

11

Case 5:18-cv-00050-MR   Document 26   Filed 03/10/21   Page 11 of 11